The next case this morning is 5 22 0 4 75 people versus Myers arguing for the appellant is Christopher Seeloff arguing for the athlete is Ivan Taylor Jr. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Good morning, counselors. Morning, your honor. Come on, your honors. We have read your briefs ready for oral argument. Mr Seeloff here to proceed. Yes, your honor. You may do so. Thank you. Your honors. Council may please support. My name is assistant appellate defender Chris Seeloff and I represent the defendant appellant in this case, Mr Keith Myers. This case from the very beginning until the end of the presentation of evidence represents a complete breakdown in the trial process. While there are numerous issues to discuss in this case, I will focus on what I believe to be the two most obvious and glaring errors in the case, the subpoena issue and the lynch instruction because the prosecutorial misconduct and ineffective assistance of counsel at issue directly impacted Mr Myers is right to a free trial, a fair trial free from unduly prejudicial evidence. You respectfully request that this court vacate his conviction and remain his case for a new and fair trial. Turning to the first issue, the subpoena issue, it is perhaps the most glaring failure that the state is responsible for. And there are two factors that are important to remember when considering this issue. First, Illinois Supreme Court rules 4 12 and 4 15 when read together, make compliance with a written defense subpoena for evidence of a defendant statements mandatory. And second, the withholding of that duly subpoenaed evidence constitutes a due process violation regardless of any evidentiary value that evidence may have had. Uh, I believe that it's important to look at this through the lens of bad faith, although it is also important to remember that bad faith is not necessary for there to be discovery violation. However, it's pretty clear that this was bad faith on the part of the state park. One of the defense counsel park. One of the first things he did when entering the case was file this written subpoena for evidence of for video evidence from the jail from the time Mr Myers was brought in until his bond hearing the next day, approximately 24 hours of video evidence that subpoena was filed hand delivered to the sheriff's office that signed for it. So they were aware of it, knew what they had to do. And over the course of a month and a half of the extra time that the court gave the state and the sheriff's office to comply with that subpoena, it didn't. And it admitted through the several hearings that were heard on this issue that it could have easily complied with the subpoena if it had just downloaded one hour of footage at a time instead of trying to download it all at once. It said when I tried to download it all at once, the system would crash. But it the sheriff's office also said that was the only effort it ever made to try to comply with the subpoena was the one effort that caused compliance to be impossible. So isn't it true that the purpose of the subpoena was to discover the video to see if the defendant actually made the statements right? Yes, Your Honor. It was to well, it was to determine whether he made the statements and also what context he made the statements. And so there was with respect to making the statements. Did your did the defendant receive some video? Was it confirmed that he made the statements on the video that was provided? So the state makes mention of the video being provided at some point. However, as we noted in the reply brief, there is no actual evidence that the video was ever actually provided except for the discovery answer that the state provided, which was only given a week after it had admitted that it had allowed this video evidence to be deleted. Furthermore, the video does not appear anywhere in the record. And the portion of the transcript that the state cites to that said Defense Counsel Matthews had seen the video is not clear. She never says that I have seen the video. She said we have seen the video, and that was in conjunction with the statement talking about the state's attorney helping her to get booking photos. So it's it's just as easily possible that she was saying since the state's attorney has seen the video and told me what was on it, but it never the video doesn't appear in the record. It's never mentioned at trial except for the pretrial transcripts that talk about it existing and the state not being able to give that video over because it allowed itself to be deleted. And furthermore, Matthews turning to the ineffective assistance claim on this issue, which is related, the first thing she should have done when she came into this case and saw all the work Park and the court had done up to this point on this issue should have been to follow through on the contempt motion against Sheriff Maroon. She if she had acquainted herself with the file, she would have seen that the state admitted to allowing the video evidence to be deleted, never once telling Defense Counsel or Mr Myers that the video would automatically delete itself. That's the question I want to ask you. You keep saying it was deleted, but it wasn't intentionally deleted by the sheriff's office. This was a tape over looping system where, if you don't preserve it, it gets recorded over. It wasn't manually intentionally gone in and deleted. Is that correct? It may not have been the state going into the computer file, highlighting it and clicking delete your honor. But the effect is still the same. And that's why I say deleted, because the state allowed it to delete itself. And while that's all a mouthful, it's also important to note that it's really a distinction without a difference. It was the state's willful inaction here, or perhaps it was gross incompetence that they didn't understand how their system worked. But the result is the same. The trial court's providence to rule on whether that has evidentiary value. And it's the state's duty under rules 412 and rule 415 to preserve that evidence until the court can make a ruling. It's also worth noting that the court denied the state's motion to quash the state, arguing that the subpoena was unduly restrictive and a phishing expedition. The court denied that motion not only because it was untimely, it was filed after the videos had been allowed to delete themselves. I don't mean to sound like I'm excusing the state's conduct because they missed deadlines. They didn't object. If they had an objection, they didn't object timely. And you pointed out the court denied that motion because it wasn't timely. But it seems to me the state also not the state's the prosecution, but the sheriff's office were trying to comply. They contacted the technology companies said, We're having trouble downloading this. Can you get back to us? Tell us how to do this. And it was the sheriff's office making attempts. They just were not successful attempts. Is that accurate? In so much as the sheriff said that he had reached out and tried to get in touch with the company directly, that is correct. However, again, the sheriff's office through administrative assistant Beth Long had also admitted that had they just downloaded an hour of footage at a time, they could have easily comply with the subpoena not only over the extended course of the subpoena extensions that the circuit court had allowed, but in the initial time that was given for compliance within the original subpoena. So again, it's the state knew how to comply with the subpoena, and it just didn't. And furthermore, it should have known that it should have also reached out to that company, which had never said it did to find some way to say, Can we pause the automatic recycling process? It also there's no evidence it ever did that either. And again, regardless, it's a due process violation, regardless of any evidentiary value, because the state didn't do what it had to do, which was preserve the evidence either by preventing that recycling process or doing the one thing it admitted it knew how to do that would preserve the evidence. And that again to the prostitution misconduct and the ineffective assistance work in tandem here because Matthews had all of those arguments available to her. She had read the file, but she simply didn't follow through on it. And had she done so, then this statement likely would have been and did not do so. So there's two separate questions for you on that. With regard to the amount of video footage that was requested in the original subpoena, it was only about 24 hours worth. Is that correct? Yes, sir. There's some debate 24 to 36, but the most common reference number is about 24 hours. Okay. And in regard to the six hours or so that apparently there was some indication somebody claimed to have seen on the defense side, um, that was there was there's nothing in the record that I could find. Correct me if I'm wrong, where either the state or the court, uh, specifically stated that six hours of video footage was transmitted to the defense per the subpoena request. Is that correct? Correct. You're I'm unaware of any video evidence from the subpoena being transmitted to the defense, and, uh, that's clear because the state admitted to that. It said all the video has been deleted. Um, there's a bit of a red herring when we're when we're told that six hours somebody had viewed six hours of the video. Or it's possible that somebody at the state's office had viewed it, but again, never preserved it, and they were simply relaying that information of what was on the video to defense counsel. But yes, there's no evidence. Defense counsel had ever seen any of this, uh, video evidence. And thank you. I just as a final note, it looks like I won't have time for the lynch issue here. But I do also want to note that as a final sort of nail in the coffin on bad faith, the downloading video that occurred later after the events of the subpoenaed video to, uh, charge Mr Meyers with a different crime. So they clearly knew how to work this system. And for whatever reason, with this subpoenaed video evidence, they didn't do it. And they wound up using that statement at trial as a pillar of its argument that this was not self defense. So we would argue for the reasons in the briefing that this was an unfair trial and that Mr Myers cases need to remand for a new and fair trial. So just, uh, to clarify the video that the state used to bring additional charges, that was not video requested in the subpoena. That was after that. Yes, it was after, um, the time that it was requested. So it had nothing to do with the subpoenaed video evidence, and it happened after the time that was requested in the subpoena. Do we know how soon after, uh, the video that had been requested had been deleted? How soon after the new video was, uh, was was taken and transmitted to the state? I apologize off the top of my head. I do not. But I do believe we referenced it in the opening brief. Um, if we did not, however, it was to my recollection, to the best of my memory from the record, it was after the, uh, time from the subpoenaed video evidence at least a few hours, if not a few days. But it was to the best of my memory. Well, after the, uh, timeline from the subpoena. Okay, thank you. Justice McCain. Nothing further. Thank you. We've got a time for rebuttal. Mr Seeloff, Mr Taylor. Ready to proceed? Yes, Your Honor's right. We do so. Your Honor's. My name is Ivan Taylor Jr. on behalf of the people for the state of Illinois. Uh, in response to defendants arguments about the subpoenas, I believe your honors mentioned about whether or not the initial subpoena request was a fishing expedition. And that was was the basis that the prosecutor filed a motion to quash the subpoena for that reason. Um, as you can read from the record, when Mr Park was was questioned about his subpoena request, he had indicated repeatedly that he doesn't know what's on. He doesn't know what's in the video, and he was unsure, but he just wanted to be able to verify the context of this statement that was made during a defendant's booking. Um, and in response to those statements, that's what the trial court even asked specifically. Like, is that the definition of a fishing expedition? Well, counsel, he also wanted to confirm whether or not his client made those statements, right? That's correct. Your honors. I believe that's not a fishing expedition, is it? No, the finding weighing the video of the statement surrounding the statement itself is not fishing expedition. It's the additional several hours after that that was requested by Mr Park at the time that was turned would be a reasonable request into a fishing expedition. Well, then did the original did the did the non fishing, uh, expedition? Um, did that get transmitted to the defense? I believe it did. Your honor, as you see on the R. O. P. On page 61 is, uh, Miss Long says that six hours of video was successfully downloaded, and Miss Matthews did say that she was. She was able to view this video. I know defense is arguing that I know this may be semantics, but let me just clarify for my own purposes. It was down. Okay, if we can agree that six hours was able to be downloaded, and if we agree that, uh, Miss Matthews said she she was able to view some of that six hours. Is there anywhere that says it was that the subpoena was partially complied with by those six hours being transmitted to the defendant? No, there's no statement from the record that indicated that the subpoena was partially complied with by those six hours in the record. Okay, and one final question at this point. Um, I know you're talking and you're probably gonna get into this. I may be jumping the gun, so I apologize. But, uh, with regard to the, um, the fact that, you know, Mr Park suggested that, you know, answered a question of the judge by saying, I don't know. And the judge says, Well, isn't that exactly what a fishing expedition is? And then the state brought a motion to quash as for that reason. Um, did the court rule on that motion of the state's the motion to quash? It was denied by believes the fact that was untimely. I'm not for what I recall from the record. This court did not specify the merits of the state's argument for quashing. They ruled that was untimely. That's why they denied that motion. Okay. Um, back to one of my points. Defendant is keeps arguing that the the destruction of the remaining video was in itself bad faith. Um, however, that seems to be overstepping the purpose of bad faith. Bad faith itself is will be for design, um, ill will or, uh, dishonesty. And there is no evidence in this record to show any bad faith on behalf of the Sheriff's Department. And in order for there to be a due process violation, one needs to have bad faith. Um, and without that bad faith, um, whatever sanction that the court could have brought for not fully complying with this subpoena, it does not necessarily rise to level of a due process violation that requires any form of reversal for a new trial. Speaking of the continuation of sanctions, when the army's defendant brings is that his second council Miss Matthews was ineffective for not attuning the civil contempt against the Sheriff's Department for failure to comply with this subpoena. People argue that the purpose of self contempt is to compel compliance with a court order. Since these videos were destroyed or no longer available, civil contempt will be improper vehicle to, um, find any form of sanctions against the Sheriff's Department. Um, regarding if the mismatches could have brought another form of sanctions through, um, 4 15 G for failure to comply with the discovery violation. Once again, uh, that is up to the decision of the trial court as to whether or not any sanctions were would be warranted. Defendant does argue within his briefs how because of the don't know. That's his furthest speculation on his part. Uh, you know, what's what's the test for determining if there was bad faith? It seems to me that if the sheriff's office knows their system, as much as ceo says recycles or deletes footage after a certain time, you come up to that deadline and you keep dragging your feet and say, well, I'm calling the tech people, but they haven't responded yet. At some point, can we not presume bad faith if they let that deadline lapse and footage is erased? Can we presume bad faith or what's the test? Um, for for for bad faith, it's really, there's no precise test for determining that faith is based upon the circumstances of the case itself. Um, and it's really up to defendant to, um, present evidence and argue about why the acts of this, uh, white acts of the state were themselves bad faith regarding what happened here. Clearly, if the sheriff's office had gone in and manually deleted it, that that's bad faith. But if you sit on your hands and watch the clock run and it goes away, it's not the same as manually deleting it, but it seems like it comes pretty close. But, um, but the thing is, in this case, it doesn't seem like the sheriff's department was just sitting on their hands. They didn't make efforts and attempts to try to get this video. Um, I know defense trying to argue that he could have done it once per day, one hour per day, but it doesn't seem that the system that the sheriff's department had would have allowed for that, but we're not fully certain. Um, wait, wait, wait, let me let me stop you. They were able to get six hours of video doing it in that fashion is my understanding. Uh, my your honor, from my understanding was that when they were trying to get it all that they were able to get six hours before the system crashed. That was my that was my understanding from reading the record. Okay, well, I'm not sure I buy the the defense argument that piecemeal was not good enough because if you asked for the whole 24 hours, the sheriff's office is trying to comply with that. But when you get near the end of the time frame, when 30 days is up on the subpoena and you don't have it yet, it seems like you should take some action to preserve at a minimum, as Mr Seeloff said, preserve the video, call the tech company and say, Hey, this is about to erase or be recorded over. Can we save this somehow? So we while we try to download it, I I don't fault the state so much for taking it. Uh, when, when the subpoena request is for the whole thing and you say, here's here's an hour tomorrow, I'll give you another hour. Third day, I'll give you a third hour. I don't fault him for that. But it seems like it's kind of bothers me that they don't do anything to preserve it. And the time runs out. I understand your concerns, your honor. Uh, however, I'm going by the record we have here. It seems as if that the sheriff's department was doing the best they can to try to comply with the subpoena. And unfortunately, they were only able to get the six hours of the 24 hours that was requested. I will point out your honor that this is on appeal. This are you under plain error on their first prong plain error and that even there is error unless the evidence is closely balanced, there is no reversal is not warranted and evidence here. Defendant's guilt is not closely balanced. Um, even though, yes, we defended testified to what occurred and the victim testified as well. It was more evidence that the people were able to present to the jury. We have the photos of the fence, the victim's injuries. Um, we also had a testimony from Miss, uh, Cummings. She testified to overhearing the, um, uh, violence portrait against the victim and was able to see the aftermath of it. Also, we have the testimony of the arresting officer who, uh, was overheard and offended as he's being arrested, stated that he should have killed the victim. Um, that ways that removes this from it being closely balanced evidence of guilt to being more than a sufficient evidence of defendant's guilt. Jose, you agree that that statement he should have killed the victim was critical here. Um, critical. I want to say critical but helpful. And I will point out that he made the statement twice once to the from a different officer. So if it if that statement would have been removed from the trial, this was a closely balanced case, wasn't it? Uh, well, are you talking about the statement at the booking or the statement from the from the arresting officer? Because those are two separate statements. They were not exactly the same, but they were similar. If we remove the statement from the from the booking, we still have his statement from the arresting officer. And we also have the landlady who overheard the and defend over her. So without this wasn't substantial evidence here that the victim was the aggressor in prior fights and prior incidents. Um, there was some evidence that, um, the victim and defend have a tumultuous relationship. And their prior, uh, there is evidence that in prior times that the victim had hit the defendant first. Um, but the jury was able. I'm sorry. You know, I see my time is up. May I please answer your question? Go ahead. My point is, wasn't this? This was a wasn't this a closely balanced case? If you take out that booking photo or that booking statement? No, Your Honor. Even without that booking statement, this is still not a closely balanced case. Like the jury was able to hear about the prior violent acts that the victim portrayed against the defendant. But in this instance, in this case, we only have the photos of the victim's injuries. We also have the end of the fight, and we have the separate statement by the arresting officer in which the defense stated that he should have killed the victim. So even if we move the statement from the booking, this is not a closely balanced case. All right, thank you. You know, I would ask permission of presiding Justice Vaughn if we could have Mr Taylor if he's if he's prepared to do so to just very, very briefly, um, tell us what his thoughts are on the lynch instruction, because I think his opponent's going to touch on that in a moment. I'd like to hear both sides of that. Yes, please do. All right. As for lynch instructions, as people argue that the committee knows from instruction speaks solely to, um, prior violent convictions, people believe lynch itself was about a prior conviction by the victim of violent conviction by the victim. So, hence, the people argue why that per those committee notes that the, um, Miss Matthews was did not have to request lynch instructions. People recognize that. Yes, there is some. There is case law, um, that would extend lynch to this prior violent acts beyond just violent convictions by the victim. However, defendant mismatch was still not ineffective for not requesting lynch instructions because lynch structure is just a continuation and extension of the general instruction revolving self defense, especially since in this domestic valley, as there's the people are able to prove beyond reasonable doubt that defendant was not justified in his actions, then he can be found guilty of domestic battery. Um, and in this instance, even if Miss Matthews should have requested lynch instruction, um, defendant was not purchased by their evidence regarding the victim and defend his testimony as to what occurred during this altercation between him and the victim. Uh, and you've got such naked. They were able to determine that. No, this was not self defense in whatsoever. We heard what the victim did in the past. We don't think that happened here. We believe that the defendant is guilty of domestic battery in this instance. Yeah, thank you. No, the question honors the people just asked that this court affirmed defense convictions. Thank you. Thank you. She's enough. You're ready to respond and rebuttal. Yes, sir. Let me start out with a question. And I think contrary to what Mr Taylor just said, I think there's no question that it was ineffective assistance. The council to fail to ask for the lynch instruction. However, we also have to find whether or not that would have changed the outcome in Lynch. The victim's prior convictions for battery were excluded here. There was testimony about the victim's past behavior, past aggressiveness. So although lynch should have been given and trial court should have asked for it, can we still find that there was an error there? Yes, Your Honor. As we argued both in the opening brief and in the reply brief, there is a substantial difference between jury hearing evidence of a victim's prior initial aggression and being instructed that that evidence can be used to determine that they were the initial aggressor. And it's not like defense attorneys don't understand the reputation they might have in the broader, non legally educated public, right? Sometimes defense attorneys are accused of cheap tricks of slandering the victim to try and make their defendant look better. And so it's important to note that this wasn't to tell the jury, Look, I'm not trying to say that she's a bad person, so she deserved to get beat up. What I'm trying to argue is my client is claiming self defense. You heard her admit it wasn't that there was evidence that she was the initial aggressor twice before she admitted it. She admitted in the first two times that they had fought, she struck him. She hit him in the face. She kicked him. She pulled on his genitals, and he responded in self defense in those instances. So not having the instruction here is the difference between the jury thinking they're just trying to make her out to be somebody who picks fights. This guy beat her up and being instructed. Actually, that is relevant, just positive, potentially dispositive information. The testimony was that the Russian officer testified he saw little to no injuries on the defendant. He saw the victim sitting there holding a bloody Ractor face. The defendant says he has scratches, but those were obtained in the woods earlier that day, not from the victim. He says he has a injury to his leg, but the officer says he didn't see any injury to the leg. It seems like with the arresting officer's testimony and the victim's and the landlord's testimony that that's not really a winning argument to me for the defendant that she started it, and I was just defending myself. She's beaten and bloody, and he's standing there naked, wanting sex. It doesn't seem they're on equal footing there to me. Well, and so that's our argument. Your honor is that the jury not being instructed did result in them. As we pointed to in our briefing and as the court stated in cruise, juries fall instructions they're given and they necessarily don't fall instructions that they're not given there. It's why the instruction exists. If it wasn't necessary to have the instruction as long as the evidence presented, then there wouldn't be any reason to have the instruction in the first place. So by sort of comparison, having the instruction and not giving it means that it's important. And when briefly to the subpoena issue, which we've talked, spent most of our time here talking about today, I just want to point out your honor asked what the test for bad faith is, as we cited in the opening and reply breeze people versus Ruffalo from the first district holds that withholding requested. This is a quote from Ruffalo withholding requested evidence. A bad faith action constitutes denial of due process simply because evidence was requested and withheld without regard to the nature of the evidence. The bad faith is the withholding of evidence that was requested. The state argues that it has to be bill will design or dishonesty. Again, I don't really know how you could argue that it wasn't at least one of those. In this case, either the state just could not bring itself to understand how its system worked in such a way that will never be able to comply with its duties or as is more likely from all the evidence we have, it kind of dragged its feet and wasn't terribly upset that it had violated its duties of discovery here. In this case, it also the state argues the purpose of civil contempt is compliance, and so there wasn't really going to be any issue here. But it's important to remember the court had moved this forward to a hearing on a criminal contempt motion, and so it's showing that the court found not only was civil contempt not a good enough because the state failed to comply, but now we're moving to holding Sheriff Maroon directly responsible for his notice. And so this brings me around to sort of the theory of the whole case here is that none of these mistakes, either on the part of the state or Matthews, were either unavoidable or harmless. These were all choices or a complete lack of understanding of what was required of anybody at one given time. And the state did not contest in its brief that if any of these do rise to the level of plain error that the cumulative effect of which denied Mr Myers is right to a fair trial, which is what we have been arguing throughout all of the arguments here today. Thank you, Mr Seawolf. Appreciate your arguments. We'll consider the briefs filed in your arguments today. We'll take the matter under advisement. It's your decision to do course.